IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WARWICK MEYER ARCT, LLC | : | CIVIL ACTION |
| | : | |
| v. | : | No. 23-2772 |
| | : | |
| TFV INVESTORS ASSOCIATES, LP, et al. | : | |
| | : | |

## MEMORANDUM

**Judge Juan R. Sánchez**                                                                 **June 24, 2024**

SB PB Victory, LP ("Victory") moves to re-open this case and intervene as a plaintiff, asserting its interest in enforcing a judgment against Defendant Thomas F. Verrichia will be jeopardized if it cannot participate in these proceedings. Because Victory's motion is untimely and its interests in this matter are adequately represented by the existing parties, the motion will be denied.

## BACKGROUND

On December 23, 2014, Plaintiff Warwick Meyer ARCT, LLC ("ARCT Partner") and Defendants TFV Investors Associates, LP and Warwick TVC-GP, LLC (together, the "Verrichia Partners") entered into the Warwick Partnership Agreement to develop land in Bucks County, Pennsylvania. Compl. ¶¶ 10-11, ECF No. 1. Thomas F. Verrichia, the third Defendant in this matter, is the sole owner and controller of the Verrichia Partners. *Id*. ¶¶ 6, 18. The Warwick Partnership Agreement included "Buy/Sell" and "Sale of Property" provisions which any partner could invoke to effectuate a sale of the partnership's property. *Id*. ¶¶ 14-15, 20. The working partnership broke down, and in December 2021, ARCT Partner notified the Verrichia Partners in writing of its intent to invoke those clauses. *Id*. ¶¶ 18, 20. The Verrichia Partners, however, refused to effectuate the sale. *Id*. ¶ 21.

On March 21, 2022, ARCT Partner filed suit in this district against the Verrichia Partners and Verrichia. *Id*. ¶ 22. Following months of settlement negotiations, the parties executed the Warwick Purchase Agreement on December 20, 2022. *Id*. ¶¶ 23-25; *see also* Compl. Ex. 2, ECF No. 1-4. Under this Agreement, the Verrichia Partners and Verrichia contracted to purchase ARCT Partner's share in the Warwick Partnership for $13.1 million, on or before April 19, 2023. Compl. ¶¶ 24, 29, 30, ECF No. 1. In exchange, ARCT Partner agreed to voluntarily dismiss the litigation without prejudice. *Id*. ¶ 26. The Verrichia Partners and Verrichia, however, did not complete the sale. *Id*. ¶ 40. On July 20, 2023, ARCT Partner filed suit in this Court a second time, seeking a declaratory judgment and damages for breach of contract. *Id*. ¶¶ 69-99.

After Defendants failed to respond to the new Complaint or appear for a default hearing, this Court entered a default judgment on November 28, 2023. Order, Nov. 28, 2023, ECF No. 18. The default judgment gave ARCT Partner the right to purchase the Defendants' ownership interest in the Warwick Partnership. *Id*. ¶ a. Further, because ARCT Partner had loaned the Warwick Partnership an amount which exceeded "the distributable cash on the sale," Defendants were directed to assign their ownership interest for $0, in exchange for forgiveness of ARCT Partner's outstanding loans. *Id*. ¶ b. This matter was closed on the same day.

On December 12, 2023, SB PB Victory, LP ("Victory") filed a Motion to Reopen Case and Intervene pursuant to Federal Rule of Civil Procedure 24(a). Mot. Intervene, ECF No. 20. Victory is a creditor of Verrichia by way of a loan it made to Tonnelle North Bergen, LLC ("Tonnelle"), which Verrichia personally guaranteed. *Id*. ¶ 1. Both Tonnelle and Verrichia defaulted on Victory's loan in 2019. *Id*. ¶ 2. The parties then entered into binding arbitration proceedings in Colorado, which culminated in a two-phase award in Victory's favor. *Id.* ¶¶ 2-6, 9. Victory petitioned to confirm the award in this district, and following litigation, the court confirmed the Phase I award

and entered judgment against Tonnelle and Verrichia for $16,573.835.18 in principal, $2,762,141.11 in pre-judgment interest, and post-judgment interest at the rate of 15% from January 6, 2022, until payment. Mot. Intervene Ex. D, ECF No. 20-4. The court also confirmed the Phase II Award in the amount of $5,127,443.48 plus interest, which continues to accrue at various rates, and entered judgment thereon. Mot. Intervene Ex. F, ECF No. 20-6. On July 17, 2023, Victory transferred the Phase I Judgment to the Court of Common Pleas of Montgomery County, Pennsylvania. Mot. Intervene ¶ 13, ECF No. 20.

Relevant to this matter, the Montgomery County Court of Common Pleas entered a charging order on October 16, 2023.[1] Mot. Intervene Ex. H, ECF No. 20-8. The charging order provides "any and all distributions, contributions, disbursements, transfers, monies, funds and payments then due and owing or thereafter due and owing to Verrichia, including . . . distributions made from proceeds of the sale of any assets" of Defendant TFV Associates, among other listed entities, shall be delivered to Victory until Victory's Judgment is paid in full. *Id*. The order was to become effective on November 1, 2023. *Id*. Victory has also sought a charging order in the Bucks County Court of Common Pleas against, *inter alia*, Defendant Warwick TVC-GP. Mot. Intervene ¶ 20, ECF No. 20.

**DISCUSSION**

Victory now moves to intervene as of right in this case pursuant to Federal Rule of Civil Procedure 24(a), claiming it has an interest in any proceeds due and owing to Defendants TFV Associates, Warwick TVC-GP, and Verrichia pursuant to the Montgomery County charging order

---

[1] On application by a judgment creditor of a partner or transferee, a court may enter a charging order against the transferable interest of the judgment debtor for the unsatisfied amount of the judgment. A charging order constitutes a lien on a judgment debtor's transferable interest and requires the limited partnership to pay over to the person to which the charging order was issued any distribution that otherwise would be paid to the judgment debtor. 15 Pa. Cons. Stat. § 8673(a).

and its motion for a charging order in Bucks County Court. ARCT Partner opposes Victory's intervention, arguing the motion is untimely, reopening the judgment would unduly delay its right to sell the property, and Victory has no injury in fact or interest in the outcome of this litigation. Because the instant motion is untimely and the existing parties in this matter can adequately represent Victory's interests, the motion will be denied.

Under Federal Rule of Civil Procedure 24(a), "the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action[.]" A litigant is entitled to intervene as a matter of right if it can show:

> first, a timely application for leave to intervene; second, a sufficient interest in the litigation; third, a threat that the interests will be impaired or affected, as a practical matter, by the disposition of the action; and fourth, inadequate representation of the prospective intervenor's interest by existing parties to the litigation.

*Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998).

Turning to the first element, an application to intervene must be timely. *See In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982). Timeliness is determined by the court based upon the totality of the circumstances. *NAACP v. New York*, 413 U.S. 345, 365–66 (1973); *see also United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1181 (3d Cir. 1994). In evaluating timeliness, the court considers three factors: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995). The "stage of the proceeding is inherently tied to the question of the prejudice the delay in intervention may cause to the parties already involved"; therefore, the analysis for the three timeliness factors overlaps. *Id*. at 370. Generally, courts are "reluctan[t] to dispose of a motion to intervene as of right on untimeliness grounds because the would-be intervenor actually may be seriously harmed if not allowed to

intervene." *Wallach v. Eaton Corp.*, 837 F.3d 356, 371–72 (3d Cir. 2016). Still, a "motion to intervene after entry of a decree should be denied except in extraordinary circumstances." *In re Fine Paper*, 695 F.2d at 500 (citation omitted). When a motion to intervene is filed in the late stages of a proceeding, the first factor weighs heavily against intervention. *Id*. (citation omitted).

Second, the intervenor must demonstrate a sufficient interest "relating to the property or transaction which is the subject of the action that is significantly protectable." *Kleissler*, 157 F.3d at 969 (internal quotation marks and citation omitted). In other words, there must be a "tangible threat to a legally cognizable interest to have the right to intervene." *Mountain Top*, 72 F.3d at 366 (citations omitted). The interest must be specific to the intervenor and directly affected in a "substantially concrete fashion by the relief sought." *Kleissler*, 157 F.3d at 972.

Third, the intervenor must show its interest may be affected or impaired. The Third Circuit "narrowly" defines "interest" for purposes of Rule 24(a)(2). *Atain Ins. Co. v. Lesser*, Civ. No. 19-05346, 2020 WL 919698, at *1 (E.D. Pa. Feb. 25, 2020). "In general, a mere economic interest in the outcome of the litigation is insufficient to support a motion to intervene." *Mountain Top*, 72 F.3d at 366. "Thus, the mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party a right to intervene." *Id*.

Finally, an intervenor must show its interests are not adequately represented by the existing parties to the litigation. Fed. R. Civ. P. 24(a)(2). Representation is considered adequate unless: (1) the interests of the parties "diverge sufficiently and the existing party cannot devote proper attention to the intervener's interests; (2) there is collusion between the representative party and the opposing party; or (3) the representative party is not diligently prosecuting the suit." *In re Wellbutrin XL Antitrust Litig.*, 268 F.R.D. 539, 547 (E.D. Pa. 2010) (citation omitted).

Turning first to the issue of timeliness, Victory asserts its motion to intervene is timely because it filed the motion within a week after learning about this case. Br. Supp. Mot. Intervene 10 (ECF pagination), ECF No. 20. The Court disagrees, and concludes the totality of the circumstances weigh against finding the motion was timely. As noted by ARCT Partner, Victory did not seek to intervene in this case until after final judgment was entered, though this case was readily discoverable through a simple internet or docket search for Verrichia's name. Br. Opp'n. Mot. Intervene 6, ECF No. 22. Victory has not explained why it only discovered this matter through an investigation conducted in the "past several days" before it filed this motion. Mot. Intervene ¶ 22, ECF No. 20. And re-opening this matter could delay ARCT Partner's efforts to market and sell the Warwick Project property. In the absence of any further explanation, the Court finds Victory's intervention request to be untimely.

Victory also fails to satisfy the remaining *Kleissler* factors. Specifically, Victory has not shown its interests are affected in a "substantially concrete fashion" by ARCT Partner's relief default judgment. *Kleissler*, 157 F.3d at 972. Victory is a judgment creditor of Verrichia and is entitled to any payments Verrichia receives from the sale of TFV Associates (as well as other assets not at issue in this case). But Victory's rights as a judgment creditor are not affected in a substantial or concrete way by the default judgment. Because of ARCT Partner's prior loans to the Warwick Partnership, Verrichia did not receive any proceeds under the terms of the judgment. Even if he had, Victory's right to any such proceeds remains undisturbed by this judgment. Mot. Intervene Ex. H, ECF No. 20-8. There is thus no tangible threat to Victory's interests, nor does it have an impaired legal interest beyond an economic one, such as would warrant its intervention. *See State Farm Mut. Auto. Ins. Co.*, 511 F. Supp. 3d. at 611 ("[A] mere economic interest in the outcome of the litigation is insufficient to support a motion to intervene.").

Finally, Victory also fails to show its interests will be inadequately represented if it cannot intervene. Victory has not articulated how or whether its interests diverge from ARCT Partner's. It also has not shown that ARCT Partner cannot devote the attention needed to protect Victory's interests or has failed to diligently prosecute the case, or that there was collusion between ARCT Partner and the Defendants. *See In re Wellburtin XL*, 368 F.R.D. at 547 (citation omitted). Accordingly, the Court concludes Victory is not entitled to intervene as of right in this matter.

In the alternative, Federal Rule of Civil Procedure 24(b) authorizes permissive intervention at the discretion of the court. Under this Rule, "the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). In deciding whether to grant permissive intervention under Rule 24(b), "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Victory has not argued it has a conditional right to intervene conferred by federal statute, and there is no evidence of a common question of law or fact shared with ARCT Partner or the Defendants. Therefore, the Court sees no reason to exercise its discretion to allow Victory to permissively intervene. Victory's motion will be denied.

An appropriate Order follows.


BY THE COURT:


/s/ Juan R. Sánchez
Juan R. Sánchez, J.


7